[Doc. No. 14]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JAMES DAVIS, on behalf of himself and all others similarly situated, as defined herein | |
| Plaintiff, | Civil No. 07-630-RBK-AMD |
| v. | |
| DELL, INC., | |
| Defendant. | **OPINION** |

**APPEARANCES:**

Patrick L. Rocco, Esq.
Shalov, Stone, Bonner &
 Rocco, LLP
65 Madison Avenue - Suite 333
Morristown, NJ 07960
        *Counsel for Plaintiff*

Craig R. Tractenberg, Esq.
Renee F. Bergmann, Esq.
Nixon Peabody, LLP
437 Madison Avenue
New York, NY 10022-7001
        *Counsel for Defendant*

**DONIO, MAGISTRATE JUDGE:**

This matter comes before the court by way of motion of Defendant Dell, Inc., ("Dell"), seeking a stay of the proceedings and to compel arbitration. In this proposed class action, Plaintiff James Davis ("Plaintiff"), on behalf of himself and all similarly situated New Jersey individuals and entities who own or have owned a Dell W2300, W2600, W3000, W3200, W3700, or W4200

series LCD television (the "putative class") filed a complaint against Dell on February 7, 2007.[1]  Dell filed a motion dated February 23, 2007 seeking an extension of time to file an answer to the complaint.  By Order dated February 27, 2007, the Court granted Dell's motion, extending the time to answer until April 14, 2007. In lieu of an answer, Dell filed the motion presently before the Court seeking to stay the proceedings and compel arbitration. Having considered the submissions of the parties, and for the reasons set forth below, the Court grants Dell's motion for a stay and to compel arbitration.

In his Amended Complaint, Plaintiff alleges that on or about December 2004, he purchased an LCD television by way of Internet sale.[2]  Amended Complaint at ¶ 11.  Plaintiff alleges that "[u]pon initial receipt of the TV, [he] was often unable to view the picture on the screen despite being [able] to clearly hear the audio."  Id.  The Amended Complaint also alleges that putative

---

1.  Initially, Mr. Davis brought the claim as a co-plaintiff with Tracy Jackson, a Texas resident, and on behalf of a nationwide class of consumers who had purchased Dell LCD televisions.  On May 8, 2007, however, after Dell filed the instant motion to stay the proceedings and compel arbitration, Mr. Davis filed an Amended Complaint in which Ms. Jackson is no longer named as a co-plaintiff and the putative class is redefined to include only New Jersey residents.

2.  The Court notes that in his Amended Complaint, Plaintiff does not specify the mode by which he ordered the television. However, in his opposition brief, Plaintiff states that he "purchased a TV directly from Dell via the internet." Plaintiff's Opposition to Dell's Motion to Compel Arbitration, at 5.  The Court also notes that in his brief, Plaintiff alleges that, assuming the arbitration agreement constitutes a contract, "a contract was not formed until the consumer clicked the 'accept' button on Dell's website." Id. at 18.

class members experienced the same problem and/or power supply failures, rendering their televisions inoperable. Id. at ¶ 6. Plaintiff further alleges that Dell sent defective replacement units until the warranties elapsed, "mask[ing] the problem for a short period of time but ultimately provid[ing] no relief[.]" Id. at ¶ 8. Plaintiff asserts that Dell sold the defective televisions "even though it knew, or was reckless in not knowing, that [the televisions] would prematurely fail[.]" Id. at ¶ 7. Plaintiff further asserts that the defects rendered the televisions unmerchantable. Id. at ¶ 23. Specifically, Plaintiff's alleged claims against Dell include claims for (1) "unfair and deceptive acts and practices" in contravention of the New Jersey Consumer Fraud Act; (2) breach of implied warranty of merchantability; and (3) unjust enrichment. Id. at 17-19. These claims are state law claims.

In the motion presently before the Court, Dell asserts that the sale of the product is governed by the Terms and Conditions of Sale ("Terms and Conditions"), which contain a provision mandating that "any claim, dispute or controversy . . . between customer and Dell . . . shall be resolved exclusively and finally by binding arbitration administered by the National Arbitration Forum . . . [.]" See Memorandum of Law in Support of Motion to Stay Proceedings and to Compel Arbitration ("Def. Br.") at 3-4; Declaration of Mary Pape dated April 12, 2007 ("Pape Decl."), Ex. A, at 3. Dell further asserts that Plaintiff was not only informed that the purchase was subject to the Terms and Conditions

immediately prior to placing his order, but, in addition, he was required to affirmatively click a button indicating that he had agreed to the Terms and Conditions in connection with his purchase. See Def. Br. at 3-4; Pape Decl. at 5, ¶ 12.  Dell avers that upon receipt of Plaintiff's order, it sent either an e-mail confirmation or written acknowledgment containing the Terms and Conditions, which included the full text of an arbitration clause and the following sentence, in bold lettering and all caps: "This document contains a dispute resolution clause." See Def. Br. at 4; Pape Decl., Exhs. C, D.  Dell next asserts that upon receipt of the television, Plaintiff was provided with another copy of the Terms and Conditions, and that he had the opportunity to return his television within twenty-one (21) days for a full refund or credit. Def. Br. at 4-5.

Dell contends that a stay of these proceedings is warranted because the arbitration provision in question is binding and covers all of Plaintiff's claims.  Id. at 6.  In support of this proposition, Dell asserts that a consumer who is presented with contractual terms and given an opportunity to either reject or assent to them is bound by such terms.  Id. at 8-9.  Furthermore, Dell asserts that any doubt concerning the scope of arbitrable issues "'should be resolved in favor of arbitration.'"  Id. at 11 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 (1983)).

Plaintiff opposes the motion for a stay and asserts that arbitration is not warranted for a number of reasons.  First,

Plaintiff contends that the Terms and Conditions do not apply to Plaintiff's purchase because the Terms and Conditions are expressly limited to the purchase of "computer systems and/or related products and/or services and support," and do not encompass the purchase of televisions.  See Plaintiff's Opposition to Dell's Motion to Compel Arbitration (hereinafter "Pl. Br."), at 7. Additionally, Plaintiff alleges that even if the Terms and Conditions apply to the purchase at issue in this case, they should not be given effect because they are unconscionable under New Jersey contract law as they contain a class action waiver.  Id. at 1.  In support of this contention, Plaintiff, relying on the recent New Jersey Supreme Court case of Muhammad v. County Bank of Rehoboth, 189 N.J. 1, 912 A.2d 88 (2006), cert. denied, 127 S. Ct. 2032, 167 L. Ed. 2d 763 (2007), asserts that class action waivers in consumer fraud cases such as the present one - involving small amounts of damages - effectively act as exculpatory clauses relieving potential defendants of liability for wrongful conduct. Pl. Br. at 23-24.  Furthermore, Plaintiff asserts that the class action waiver violates New Jersey's fundamental public policy of ensuring the availability of consumer class actions, and that New Jersey has a materially greater interest than Texas in having its law applied to this dispute.  Id. at 16-17.  Plaintiff additionally alleges that the arbitration clause is unconscionable because it contains "oppressive" rules and procedures of Dell's chosen arbitral forum, the National Arbitration Forum ("NAF").  Id. at 28.

Dell asserts that the arbitration clause is not procedurally

unconscionable because Plaintiff was "free to purchase a television from any of Dell's competitors who do not include arbitration provisions as a term of sale." Def. Br. at 14. Dell further asserts that the parties' contractual choice of Texas law is enforceable for two reasons. First, Dell asserts that, because there is no fundamental New Jersey policy against class arbitration waivers, applying Texas law would not violate a fundamental New Jersey policy. See Reply in Support of Motion to Stay Proceedings and to Compel Arbitration ("Def. Reply Br."), at 6 (citing Homa v. American Express Co., 496 F. Supp. 2d 440 (D.N.J. 2007)). Second, Dell asserts that New Jersey does not have a materially greater interest in the dispute than Texas because "Texas has at least as significant an interest in protecting its resident business's [sic] expectations that its nationwide transactions will be subject to consistent legal standards, as does New Jersey in protecting a consumer whose television allegedly does not work." Id. at 9. Additionally, Dell asserts that the arbitration provision is not an exculpatory clause in contravention of a fundamental New Jersey policy for several reasons: the prospective recovery amount is not low enough to dissuade potential plaintiffs from pursuing litigation; the arbitral forum and "applicable law afford[] prevailing consumers a right to attorneys' fees;" and, expensive experts would not be needed to prove the fraud claims. Id. at 11-12. Finally, Dell alleges that the chosen arbitral forum has been "widely recognized . . . as offering 'a model[] for fair cost and fee allocation.'" Id. at 14 (quoting In re Currency Conversion Fee

Antitrust Litig., 265 F. Supp. 2d 385, 412 (S.D.N.Y. 2003) (internal quotations omitted)).

The Court begins its analysis by noting that on a motion to compel arbitration, the Court must decide: (1) whether the parties entered into a valid arbitration agreement, and, if so, (2) whether the scope of that agreement encompasses the claims at issue in this case. Trippe Mfg. Co. v. Niles Audio Corp, 401 F.3d 529, 532 (3d Cir. 2005). Once the party seeking to compel arbitration establishes its right to arbitration, if the opposing party does not defeat that right, the trial court has no discretion and is obligated to compel arbitration. Dell, Inc. v. Muniz, 163 S.W.3d 177, 181 (Tex. Ct. App. 2005) (citing Cantella & Co. v. Goodwin 924 S.W.2d 943, 944 (Tex. 1996)). The Court further notes that although "[t]he FAA establishes a strong federal policy in favor of compelling arbitration over litigation," Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 104 (3rd Cir. 2000), "federal case law dictates that general contract defenses such as fraud, duress or unconscionability, that are grounded in state contract law may be applied" to invalidate an arbitration agreement. B&S Ltd., Inc. v. Elephant and Castle Intern., Inc., 388 N.J. Super. 160, 175, 906 A.2d 511 (Ch. Div. 2006); see also 9 U.S.C. § 2. The Court also notes that New Jersey adheres to a general policy favoring the arbitration of disputes over traditional litigation. See, e.g., Sarbak v. Citigroup Global Markets, Inc., 354 F. Supp. 2d 531, 537 (D.N.J. 2004).

Before the Court addresses the questions of the validity and

scope of the arbitration clause, the Court must, as a threshold matter, determine whether the Terms and Conditions containing the arbitration provision apply to Plaintiff's purchase of a television in this instance.  If the Terms and Conditions do not apply to Plaintiff's purchase, the Court's inquiry is at an end.  If, however, the Court finds that the Terms and Conditions apply to Plaintiff's purchase, the Court must next determine whether Texas law - the choice of law set forth in the Terms and Conditions - or New Jersey law will govern the validity of the provisions in the Terms and Conditions.  Finally, the Court must determine whether the arbitration provision is valid under the appropriate state's law.

The Court notes that the Terms and Conditions read, in relevant part: "These terms and conditions ("Agreement") apply to your purchase of *computer systems and/or related products and/or services and support*."  Pape Decl., Ex. A at 1 (emphasis added). Plaintiff relies upon this language in support of his assertion that the Terms and Conditions do not apply to the purchase of televisions from Dell.  Pl. Br. at 7.  Dell, however, argues that despite the wording, the Terms and Conditions cover the purchase of televisions.  Specifically, Dell asserts that Plaintiff has "submitted no affidavit testimony or evidence of any kind that his agreement to the Terms and Conditions was intended for some other transaction," or that he was "confused in some way about the application of the Agreement to his purchase."  Def. Reply Br. at 2 n.1.  Dell alleges that at the time Plaintiff placed his order,

8

Plaintiff "could not place his order without actively clicking a button indicating that he agreed to Dell's Terms and Conditions of Sale." See Pape Decl. at 5, ¶ 12.   Moreover, Dell's online ordering process and the printed copy of the Terms and Conditions that shipped with the televisions informed Plaintiff that "[a]ll sales are subject to Dell's Terms and Conditions of Sale." Id. at 3, ¶ 5.

In making its threshold inquiry into whether Plaintiff entered into an agreement and accepted the Terms and Conditions in connection with his purchase of a television, the Court shall apply state law to the issue of contract formation. See, e.g., Specht v. Netscape Commc'n Corp., 306 F.3d 17, 27 (2d Cir. 2002)(finding district court "properly concluded that in deciding whether parties agreed to arbitrate a certain matter, a court should generally apply state-law principles to the issue of contract formation."). Plaintiff cites to New Jersey law in his argument concerning interpretation of the contract. Pl. Br. at 15. Defendant asserts that Texas law governs the issue of contract formation and performance, because the contract at issue contains a choice of law provision that states that Texas law shall apply to all disputes. Def. Reply Br. at 9 n.6. However, the choice of law provision contained within the Terms and Conditions does not govern the law to be applied in determining whether, as a threshold matter, there was a contract in the first place. Indeed, if the parties never entered into a contract, then a choice of law provision contained within the document purporting to be a contract would have no

9

effect.

In this diversity case, New Jersey choice of law analysis governs which law applies.  See _Klaxon Co. v. Stentor Elec. Mfg._, 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); _Henry v. Richardson-Merrell Inc._, 508 F.2d 28, 31 (3d Cir. 2003).  This Court will therefore follow New Jersey choice-of-law rules to determine whether a contract was formed between the parties.  New Jersey courts consider the factors listed in Sections 6 and 188 of the Restatement (Second) of Conflicts of Laws in determining issues with respect to contract validity and rights created thereby.  _Gen. Am. Life Ins. Co. v. International Ins. Co._, No. Civ. A. 98-5588, 2000 WL 35547519, at *10 (D.N.J. Jan. 3, 2000) (citing _Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n Ins. Co._, 134 N.J. 96, 102 (1993)).  According to Section 188 of the Restatement, the general rule in contract actions is that the law of the state with "the most significant relationship to the transaction and the parties" under the principles stated in Section 6 of the Restatement governs.  See _Gilbert Spruance Co._, 134 N.J. at 102.  Here, Plaintiff is a New Jersey resident and purports to represent a class of New Jersey residents.  Dell maintains its principal place of business in Texas.  See Pape Decl. at 2, ¶ 3. Clearly, then, both states have an interest in having their law apply to the Court's contract analysis here.  The Court notes, however, that there is no conflict between Texas and New Jersey law regarding the relevant issue of contract formation, and therefore, the Court applies New Jersey law in determining whether the Terms and

10

Conditions constitute the contract terms.  The agreement at issue in this case may be characterized as a "clickwrap" agreement, which has been explained by one court as follows: "[a] clickwrap agreement appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction . . . .  Even though they are electronic, clickwrap agreements are considered to be writings because they are printable and storable."  Feldman v. Google, Inc., 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007)(internal citations omitted).  Under both New Jersey and Texas law, when a party uses his computer to click on a button signifying his acceptance of terms and conditions in connection with an online transaction, he thereby manifests his assent to an electronic agreement.  See Recursion Software, Inc. v. Interactive Intelligence, Inc., 425 F. Supp. 2d 756, 782-83 (N.D. Tex. 2006) (finding that clicking "yes" to terms of software license agreement on website, where software could not be installed without clicking "yes," constituted acceptance of terms of license agreement); Hotels.com, L.P. v. Canales, 195 S.W.3d 147, 154-55 (Tex. Ct. App. 2006) ("'[c]lick-wrap' agreements require the user to review or scroll through terms and assent to the contractual terms by clicking a button that reads 'I Agree' or manifesting some other means of express assent[.]"); Caspi v. Microsoft Network, L.L.C., 323 N.J. Super. 118, 122, 125, 732 A.2d 528 (App. Div. 1999) (prospective members could scroll through MSN's membership agreement and "assent to the terms of the agreement by clicking on

11

'I Agree' using a computer mouse," so plaintiffs "were free to scroll through the various computer screens that presented the terms of their contracts before clicking their agreement."), <u>cert. denied</u>, 162 N.J. 199, 743 a.2d 851 (1999).  Therefore, under both Texas and New Jersey law, a party may manifest assent to a contract by clicking on an "I Accept" button in connection with an internet transaction.

Having reviewed the submissions, the Court concludes that the clicking of the accept box constituted a manifest assent by Plaintiff to Dell's Terms and Conditions.  There has been no submission by Plaintiff contradicting Dell's position that Plaintiff "clicked" the box accepting the Terms and Conditions. Moreover, Plaintiff does not dispute that the click through stated that "[t]he Terms and Conditions of Sale contain very important information about your rights and obligations as well as limitations and exclusions that may apply to you.  They contain limitations of liability and warranty information.  They also contain an agreement to resolve disputes through arbitration, rather than through litigation.  Please read them carefully."  Pape Decl. at 5, ¶ 12.  Moreover, as noted by Dell, Plaintiff has not presented any evidence that contradicts the declaration of Dell that Plaintiff assented to the terms and conditions with the click through.  To the contrary, in his brief, Plaintiff states that "assuming the arbitration agreement constitutes a contract, . . . the place of contracting was New Jersey," and Plaintiff further states that "[a] contract was not formed until the consumer clicked

the 'accept' button on Dell's website."   Pl. Br. at 18.   In addition, as noted by Defendant, upon placing an order, a purchaser receives "an acknowledgment that specifically referred to both the Dell TV and Agreement and contained a hyperlink to the Agreement." Def. Reply Br. at 3; Pape Decl. at 3, ¶ 5, Exhs. C and D.

Rather than contesting whether he clicked the computer to accept the Terms and Conditions, Plaintiff instead asserts that the Terms and Conditions do not govern the purchase of televisions from Dell.   In this regard, Plaintiff asserts that the Terms and Conditions are not ambiguous, and that they are limited to the purchase of computer systems and/or related products.[3]  Pl. Br. at 11.   While the Court agrees that the Terms and Conditions are not ambiguous, and that a television is not a "computer system" or "related product,"[4] the Court rejects Plaintiff's narrow view that the Terms and Conditions do not apply to his purchase.  See Pl. Br. at 18.   Rather, the Court concludes that the Terms and Conditions are applicable to the sale when Plaintiff clicked the computer stating "I AGREE to Dell's Terms and Conditions of Sale" in connection with his purchase of a television.  See Pape Decl. at 5; Intratex Gas Co. v. Puckett, 886 S.W.2d 274, 278 (Ct. App. Tex. 1994)("[b]eyond the four corners of the parties' agreement, their

---

3.  Because Plaintiff does not dispute that he clicked on the computer stating that he agreed to Dell's Terms and Conditions, the Court concludes that there is no material issue of fact with respect to the issue of contract formation.

4.  In this regard, the Court rejects Dell's assertion that televisions fall under the definition of a "computer system" or "related product."

intent may be evidenced from the surrounding facts and circumstances when the contract was entered."); Heffron v. Adamar of New Jersey, Inc., 270 F. Supp. 2d 562 (D.N.J. 2003) ("[T]he court 'assumes the intent of the parties to an instrument is 'embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement.'' . . . 'This does not mean, however, that the court is confined to the four corners of the written document;' rather, the court must read 'the contract in the context in which it was made.'")(internal quotations omitted).  Here, Plaintiff could not have purchased a television without actively choosing to click the computer indicating their agreement to the Terms and Conditions.  Pape Decl., at 6.[5]  The Court thus finds that the Terms and Conditions apply not only to the purchase of "computer systems and/or related products and/or services and support[,]" but also that such terms govern Plaintiff's purchase of a television in this instance.

Having found that the Terms and Conditions apply to Plaintiff's purchase of a television, the Court's next inquiry is whether the arbitration provision contained within those Terms and Conditions is enforceable.  The arbitration clause provides in relevant part that all disputes under the agreement will be

---

5.  The Court further notes that the Terms and Conditions state in capital letters that "[t]his agreement shall apply unless (I) you have a separate purchase agreement with Dell, in which case the separate agreement shall govern; or (ii) other Dell terms and conditions apply to the transaction."  Pape Decl., Ex. A at 1.

governed by Texas law.  See Pape Decl., Ex. A at 3.  The Court
notes that, "in evaluating whether a contractual choice of law
clause is enforceable, federal courts sitting in diversity apply
the choice-of-law rules of the forum state."  Homa v. American
Express Co., 496 F. Supp. 2d 440, 447 (D.N.J. May 2007).  Under New
Jersey law, a choice of law provision will be honored unless

> (1) [t]he state chosen has no substantial
> relationship to the parties or the transaction
> [and there is no other reasonable basis for
> the parties' choice]; or (2) application of
> the law chosen would conflict with a
> fundamental public policy of a state having a
> greater interest in a determination of a
> particular issue and [the law] of such state
> would be applicable in the absence of the
> choice of law provision under the
> governmental-interest analysis.

Id. at 447; see also Restatement (Second) Conflict of Laws §
187(2).  Thus, under Section 187(2), the Court must first determine
whether Texas has a substantial relationship to the parties or
their transaction.  Omstead v. Dell, Inc., 473 F. Supp. 2d 1018,
1023 (N.D. Cal. 2007).  If the answer to this inquiry is no, the
Court need not apply Texas law.  Id.  If the answer is yes,
however, the Court must then determine whether Texas law is
contrary to a fundamental New Jersey policy.  Id.  If there is no
such conflict, the Court shall enforce the parties' choice of Texas
law.  Id.; see also Homa, 496 F. Supp. 2d at 448 (finding that once
it was determined that there is no fundamental policy against class
action waivers in New Jersey, the court's inquiry was at an end).
If there is a conflict between Texas law and a fundamental New
Jersey policy, the Court must determine whether New Jersey has a

15

"materially greater interest than the chosen state in the determination of the particular issue." Omstead, 473 F. Supp. at 1023 (quoting Restatement (Second) Conflict of Laws § 187(2)).

The Court finds that Dell has easily satisfied the first prong of the choice-of-law analysis. Dell maintains a principal place of business in Texas. Pape Decl., at 2. See, e.g., Homa, 496 F. Supp. 2d at 447 (citing Restatement (Second) of Conflicts of Law § 187, cmt. f ("When the state of the chosen law has some substantial relationship to the parties or the contract, the parties will be held to have had a reasonable basis for their choice. This will be the case, for example, when this state is that where . . . one of the parties is domiciled or has his principal place of business.")).

Under the second prong of the choice-of-law analysis, the Court shall examine whether under Texas law, the arbitration agreement is valid and enforceable. The Court notes that Plaintiff does not assert whether the class action waiver is unconscionable under Texas law, and Plaintiff therefore fails to show, or even argue, that the arbitration provision is unconscionable under Texas law. Nevertheless, the Court finds that class action waivers are not unconscionable under Texas contract law. See, e.g., AutoNation USA Corp. v. Leroy, 105 S.W.3d 190, 200 (Tex. Ct. App. 2003) (holding "there is no entitlement to proceed as a class action" and upholding arbitration agreement containing a class action waiver); see also Carideo v. Dell, Inc., 492 F. Supp. 2d 1283 (W.D. Wash. 2007)(noting that plaintiffs attacking validity of class action

16

waiver conceded that if court applied Texas law, they would have to submit individual claims to arbitration).

Although not asserting that the arbitration clause contravenes Texas law, Plaintiff does assert that Dell's arbitration clause contravenes a fundamental New Jersey policy against class action waivers that act as exculpatory clauses, and that therefore the Court should not apply Texas law. See Pl. Br. at 23. While in Muhammad, the New Jersey Supreme Court cautioned that "in New Jersey, exculpatory waivers that seek a release from a statutorily imposed duty are void as against public policy," the Muhammad Court expressly rejected the notion that class action waivers are "per se unenforceable." Muhammad, 189 N.J. at 19, 912 A.2d at 99 (citing McCarthy v. NASCAR, Inc., 48 N.J. 539, 542, 226 A.2d 713 (1969)). The New Jersey Supreme Court then discussed several characteristics that embody unconscionable class-arbitration waivers. According to the Court, the first hallmark of an unconscionable class-arbitration waiver is its inclusion in a contract of adhesion. Id. at 15, 912 A.2d at 96-97 ("The determination that a contract is one of adhesion . . . 'is the beginning . . . of the inquiry' into whether a contract, or any specific term therein, should be deemed unenforceable based on policy considerations.") (quoting Rudbart v. North Jersey Dist. Water Supply Com'n., 189 N.J. 344, 355, 605 A.2d 681 (1992)). The Court in Muhammad then examined the contract to determine whether it adversely affected the public interest to the point that the "ability of . . . consumers effectively to pursue their statutory rights under [New Jersey's] consumer protection

17

laws overrides the defendants' right to seek enforcement of the class-arbitration bar." 189 N.J. at 22, 912 A.2d at 101.  With the public interest as its guide, the Court found the class-arbitration waiver to be unconscionable because the potential recovery amount was so low that it precluded "rational" consumers from pursuing individual litigation; the contract at issue was for a service that was essentially a necessity for many consumers; and, "without the availability of a class-action mechanism, many consumer-fraud victims may never [have] realize[d] that they [were] wronged." Id. at 20, 912 A.2d at 99-100.

     In this case, Plaintiff's New Jersey consumer fraud claim is a statutory cause of action and the contract between Dell and Plaintiff bears many, if not all, of the essential hallmarks of a contract of adhesion.   However, Plaintiff alleges, without an affidavit or any other documentation to support the claim, that the potential individual recovery amount per litigant in this case - ranging from approximately $1,000 to $3,000 - precludes individual consumers from hiring lawyers willing to take the case.  See Pl. Br. at 25.  Moreover, the Court observes that Dell's allegedly fraudulent practice of replacing inoperable LCD televisions with more inoperable LCD televisions is not the type of wrongdoing likely to go unnoticed by consumers.  Finally, "it cannot be said that the enforcement of the class-arbitration waiver would be so unconscionable that 'no decent, fairminded person would view the results without being possessed of a profound sense of injustice,' or that enforcement of the waiver would 'shock the conscience.'"

18

<u>Homa</u>, 496 F. Supp. 2d at 451 (citations omitted).  As noted in
<u>Homa</u>, at most, the class-arbitration waiver "creates an advantage
for Defendants and imposes a hardship on Plaintiff." <u>Id.</u> "That,
however, is insufficient to support a finding of
unconscionability." <u>Id.</u> Consequently, the Court finds that the
class-arbitration waiver in Dell's Terms and Conditions does not
contravene a New Jersey fundamental public policy.  Accordingly,
Texas law will govern the contract between the parties here, and
the Court shall grant the motion to stay this action and compel
arbitration pursuant to the Terms and Conditions.

Moreover, even if the Court were to conclude that the
application of the class action waiver in the arbitration agreement
violated a New Jersey fundamental public policy, that determination
would not end "the unconscionability analysis." <u>Gay</u>, 2007 WL
4410362 at *19.  Rather, federal law controls and state law "must
conform with it." <u>Id.</u>  As the Third Circuit recently held, a state
law decision that holds an arbitration agreement unconscionable on
the basis of a class action waiver provision due to the fact that
the provision is contained in an arbitration agreement rather than
in "contracts in general" is not consistent with federal law. <u>Id.</u>
at *20.  However, as noted above, "<u>Muhammad</u> does not stand for the
proposition that there is a fundamental public policy in New Jersey
against the enforcement of class-arbitration waivers." <u>Homa</u>, 496
F. Supp. 2d at 448.  The Court need not examine whether application
of New Jersey law under <u>Muhammad</u> is inconsistent with federal law.

The Court also rejects Plaintiff's allegations that NAF is an

19

"unfair and unreasonable forum," and that the arbitration clause requiring arbitration through NAF is therefore "unconscionable." See Pl. Br. at 28-29. As is noted by Dell, courts have directly rejected the same challenges of bias against NAF that Plaintiff now makes. See Marsh v. First USA Bank, N.A., 103 F. Supp. 2d 909, 926 (N.D. Tex. 2000)("The Court concludes that Plaintiffs' concerns are merely illusory. Plaintiffs' accusations of bias are directed toward NAF, not the independent arbitrators who actually conduct the arbitration. Aside from Plaintiffs' conclusory allegations, there is no evidence whatsoever that they would be unfairly treated by any arbitrator. . . . [E]ach member of the arbitration panel must take an oath to follow the NAF Code of Procedure, the Code of Conduct, and prevailing ethical and professional standards. Each arbitrator is obligated to disclose any conflict of interest in the particular dispute, and disqualification will result if bias or interest is found. . . . The Court is satisfied that NAF will provide a reasonable, fair, and impartial forum within which Plaintiffs may seek redress for their grievances."); Vera v. First USA Bank, N.A., No. Civ. A. 00-89, 2001 WL 640979, at *1-2 (D. Del. Apr. 19, 2001) (noting that "NAF is a model for fair cost and fee allocation" and that "challenges to the impartiality of an arbitrator cannot be entertained by a district court 'until after the conclusion of arbitration and the rendition of an award.'"); Lloyd v. MBNA Am. Bank, N.A., Civil Action No. 00-109, 2001 WL 194300, at *3 (D. Del. Feb. 22, 2001) ("Plaintiff offers no persuasive evidence that the National Arbitration Forum is anything

but neutral and efficient.")(citing <u>Sagal v. First USA Bank, N.A.</u>, 69 F. Supp. 2d 627 (D. Del. 1999), <u>aff'd</u>, 254 F.3d 1078 (3d Cir. 2001), <u>aff'd,</u> 27 Fed. Appx. 82 (3d Cir. 2002)).

Consequently, and for the reasons set forth above, the Defendant's motion for a stay of the proceedings and to compel arbitration is granted.

An appropriate Order will be entered.

<u>s/ Ann Marie Donio</u>
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

Dated:  December 28, 2007

cc: Hon. Robert B. Kugler